# IN THE
# United States Court of Appeals
## FOR THE THIRD CIRCUIT

———————————

WAYNE PRATER,

*Appellant,*

v.

PENNSYLVANIA DEPARTMENT OF CORRECTIONS, *et al.*,

*Appellee,*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

———————————

**BRIEF OF THE APPELLATE LITIGATION CLINIC AT THE UNIVERSITY OF VIRGINIA SCHOOL OF LAW AS APPOINTED *AMICUS CURIAE* SUPPORTING APPELLANTS**

———————————

J. Scott Ballenger
Catherine E. Stetson
Tristan D. Locke (Third Year Law Student)
Samuel P. Gerstemeier (Third Year Law Student)
Appellate Litigation Clinic
UNIVERSITY OF VIRGINIA SCHOOL OF LAW
580 Massie Road
Charlottesville, VA 22903
202-701-4925
sballenger@law.virginia.edu

*Amicus Counsel for Appellant*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................iv

STATEMENT OF JURISDICTION........................................................................1

STATEMENT OF ISSUES ....................................................................................2

STATEMENT OF RELATED CASES ...................................................................2

INTRODUCTION ..................................................................................................3

STATEMENT OF THE CASE................................................................................6

    Proceedings Below ...........................................................................................6

        Wayne Prater .............................................................................................6

        Isaac Vaughan............................................................................................7

        Aaron Vaughn............................................................................................9

    Statement of Facts Relevant to The Merits.....................................................10

        Wayne Prater .............................................................................................10

        Isaac Vaughan............................................................................................12

        Aaron Vaughn............................................................................................13

SUMMARY OF ARGUMENT .............................................................................14

STANDARD OF REVIEW ...................................................................................16

ARGUMENT .........................................................................................................17

I.    THE MAGISTRATE JUDGES LACKED JURISDICTION
      UNDER 28 U.S.C. § 636(C)(1) TO ISSUE FINAL ORDERS IN
      THESE PRISONER CIVIL RIGHTS ACTIONS....................................17

      A. There Was No Express Consent to Magistrate Judge
         Jurisdiction from All Parties in Any of These Cases..........................17

         1. Section 636(c) requires consent by any party, served or
            unserved, directly affected by a magistrate judge's final
            order or judgment..........................................................17

         2. No parties in Wayne Prater's case consented to the
            magistrate judge's jurisdiction.......................................19

         3. None of the later named additional defendants consented to
            magistrate jurisdiction in the *Vaughan* and *Vaughn* cases............21

      B. *Roell's* Implied Consent Principle Does Not Create Magistrate
         Jurisdiction in These Cases ................................................22

         1. *Roell's* implied-consent holding is limited to exceptional
            situations in which all parties were individually made aware
            of the need to consent and right to refuse it, and signified
            consent by continued participation ................................22

         2. *Roell's* implied consent principle does not apply to these
            cases .............................................................................26

      C. This Court Should Consider Using Its Supervisory Authority to
         Review the District Court's Consent Procedures................................31

II.   WHEN A MAGISTRATE JUDGE ENTERS A JUDGMENT
      UNDER § 636 WITHOUT FIRST OBTAINING ALL PARTIES'
      CONSENT, THE PROPER REMEDY IS TO VACATE THE
      DECISION BELOW ..............................................................35

      A. The Text and Structure Of 28 U.S.C. § 636 Support This
         Court's Appellate Jurisdiction to Vacate Judgments That Are
         Void for Lack of Subject Matter Jurisdiction ......................................36

    B. Appellate Courts Have Supervisory Power to Vacate a Void
       Judgment ............................................................................38

III.   THE MAGISTRATE JUDGES ERRED IN DISMISSING
    PRATER'S COMPLAINT AND IN GRANTING SUMMARY
    JUDGMENT AGAINST VAUGHN AND VAUGHAN ........................41

    A. Prater Alleged Facts Demonstrating Imminent Danger of
       Serious Physical Harm ........................................................42

    B. Vaughn And Vaughan Exhausted Their Administrative
       Remedies ............................................................................45

       1. DC-ADM 804 and DC-ADM 001 Are Alternative, Coequal
          Paths for Exhaustion of Administrative Remedies ........................46

       2. Isaac Vaughan exhausted administrative remedies by
          verbally reporting abuse to prison staff...........................................50

       3. Aaron Vaughn exhausted administrative remedies by
          following the procedures described in ADM 001 .........................51

CONCLUSION................................................................................52

CERTIFICATE OF BAR MEMBERSHIP...............................................54

CERTIFICATE OF COMPLIANCE......................................................55

CERTIFICATE OF SERVICE .............................................................56

CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEF.............................57

CERTIFICATE OF PERFORMANCE OF VIRUS CHECK ...............................58

# TABLE OF AUTHORITIES

## Cases

*Abdul-Akbar v. McKelvie,*
239 F.3d 307 (3d Cir. 2001) ....................................................... 20, 44

*Albritton v. Cagle's Inc.,*
508 F.3d 1012 (11th Cir. 2007) ....................................................... 29

*Allah v. Seiverling,*
229 F.3d 220 (3d Cir. 2000) ....................................................... 16

*Anderson v. Woodcreek Venture, Ltd.,*
351 F.3d 911 (9th Cir. 2003) ....................................................... 34, 35

*Andrews v. Cervantes,*
493 F.3d 1047 (9th Cir. 2007) ............................................... 43, 44, 45

*BedRoc Ltd., LLC v. United States,*
541 U.S. 176 (2004) ....................................................... 36

*Branch v. Umphenour,*
936 F.3d 994 (9th Cir. 2019) ....................................................... 19

*Brown v. Johnson,*
387 F.3d 1344 (11th Cir. 2004) ....................................................... 43

*Burton v. Schamp,*
25 F.4th 198 (3d Cir. 2022) ....................................................... *passim*

*Caprera v. Jacobs,*
790 F.2d 442 (5th Cir. 1986) ....................................................... 22

*Chavis v. Chappius,*
618 F.3d 162 (2d Cir. 2010) ....................................................... 45

*Cold Metal Process Co. v. United Engineering & Foundry Co.,*
190 F.2d 217 (3d Cir. 1951) ....................................................... 21

*Coleman v. Labor & Industry Review Commission,*
860 F.3d 461 (7th Cir. 2017) ....................................................... 18, 30

*Commodity Futures Trading Comm'n v. Schor,*
478 U.S. 833 (1986) ....................................................... 21

iv

*Davis v. Harlow*,
  632 Fed. Appx. 687 (3d Cir. 2015) .................................................. 27

*Donaldson v. Ducote*,
  373 F.3d 622 (5th Cir. 2004) ........................................................ 20

*Dooley v. Wetzel*,
  957 F.3d 366 (3d Cir. 2020) ......................................................... 16

*Downey v. Pennsylvania Dep't of Corr.*,
  968 F.3d 299 (3d Cir. 2020) ......................................................... 48

*Ellison v. Am. Bd. of Orthopaedic Surgery*,
  11 F.4th 200 (3d Cir. 2021) ......................................................... 37

*Erickson v. Pardus*,
  551 U.S. 89 (2007) .................................................................... 16

*Freeman v. Wetzel*,
  No. CV 17-1506, 2020 WL 6730897 (W.D. Pa. Aug. 6, 2020), report and
  recommendation adopted, No. 2:17-cv-1506, 2020 WL 5362050
  (W.D. Pa. Sept. 8, 2020) ............................................................ 48

*Gee v. Estes*,
  829 F.2d 1005 (10th Cir. 1987) ..................................................... 20

*Gomez v. United States*,
  490 U.S. 858 (1989) ............................................................... 37-38

*Grayson v. Mayview State Hosp.*,
  293 F.3d 103 (3d Cir. 2002) ......................................................... 45

*Gully v. Interstate Natural Gas Co.*,
  292 U.S. 16 (1934) ................................................................... 40

*Hall v. United States*,
  44 F.4th 218 (4th Cir. 2022) ............................................... 42, 43, 44

*Hardy v. Shaikh*,
  959 F.3d 578 (3d Cir. 2020) ......................................................... 16

*Hunter v. Roventini*,
  617 Fed. Appx. 225 (4th Cir. 2015) ................................................. 20

*Ibrahim v. District of Columbia*,
 463 F.3d 3 (D.C. Cir. 2006) ............................................................. 43

*Johnson v. Lasko*,
 No. 1:20-CV-149, 2022 WL 4396192 (W.D. Pa. Sept. 23, 2022) .................. 49

*Lewis v. English*,
 No. CV 20-2790, 2022 WL 407376 (E.D. Pa. Feb. 10, 2022) ........................ 49

*Mark I, Inc. v. Gruber*,
 38 F.3d 369 (7th Cir. 1994) ............................................................. 22

*McAlphin v. Toney*,
 281 F.3d 709 (8th Cir. 2002) ........................................................... 43

*Moore v. Lamas*,
 No. 3:12-CV-223, 2017 WL 4180378 (M.D. Pa. Sept. 21, 2017) .................. 49

*Newsome v. Teagarden*,
 No. 1:18-CV-317, 2021 WL 1176102 (W.D. Pa. Mar. 29, 2021) .................. 49

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*,
 139 S. Ct. 1881 (2019) ................................................................... 37

*Phillips v. United States*,
 312 U.S. 246 (1941) ................................................................... 40-41

*Pirl v. Ringling*,
 No. 19-208J, 2021 WL 1964461 (W.D. Pa. Mar. 29, 2021), report and
 recommendation adopted, No. 3:19-CV-208, 2021 WL 4198453
 (W.D. Pa. Sept. 15, 2021) ............................................................... 48

*Porter v. Pennsylvania Dep't of Corr.*,
 974 F.3d 431 (3d Cir. 2020) ......................................................... 50-51

*Pressley v. Huber*,
 No. 3:08-CV-00449, 2018 WL 1079612 (M.D. Pa. Jan. 11, 2018), report and
 recommendation adopted, CV 3:08-0449, 2018 WL 1077300
 (M.D. Pa. Feb. 27, 2018) ............................................................... 49

*Ray v. Kertes*,
 285 F.3d 287 (3d Cir. 2002) ........................................................... 52

*Rhode Island v. Massachusetts*,
 37 U.S. 657 (1838) ....................................................................... 38

*Rinaldi v. United States*,
904 F.3d 257 (3d Cir. 2018) ............................................................. 52

*Roberts v. Sea-Land Servs., Inc.*,
566 U.S. 93 (2012) .......................................................................... 37

*Roberts v. United States Dist. Court for the Northern Dist. of Cal.*,
339 U.S. 844 (1950) ........................................................................ 20

*Roell v. Withrow*,
538 U.S. 580 (2003) ................................................................. *passim*

*Ross v. Blake*,
578 U.S. 632 (2016) ................................................................... 49-50

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ..................................................................... 38-39

*Stern v. Marshall*,
564 U.S. 462 (2011) ....................................................................... 38

*Stickney v. Wilt*,
90 U.S. 150 (1874) ............................................................... 39, 40, 41

*Talley v. Pa. Dep't of Corr.*,
No. CV 19-1687, 2019 WL 6050744 (E.D. Pa. Nov. 14, 2019) .............. 49

*The Resolute*,
168 U.S. 437 (1897) ....................................................................... 38

*United States v. Corrick*,
298 U.S. 435 (1936) ....................................................................... 40

*United States v. McKie*,
112 F.3d 626 (3d Cir. 1997) ............................................................ 37

*United States v. Raddatz*,
447 U.S. 667 (1980) ....................................................................... 38

*Vandiver v. Prison Health Servs., Inc.*,
727 F.3d 580 (6th Cir. 2013) ........................................................... 43

*Victor v. Moss*,
   No. 1:20-CV-425, 2022 WL 2313168 (M.D. Pa. Apr. 5, 2022), report and
   recommendation adopted, No. CV 1:20-425, 2022 WL 2306904
   (M.D. Pa. June 27, 2022) ................................................................... 49

*Walling v. James V. Reuter, Inc.*,
   321 U.S. 671 (1944) ........................................................................... 41

*William Jameson & Co. v. Morgenthau*,
   307 U.S. 171 (1939) ........................................................................... 41

*Williams v. King*,
   875 F.3d 500 (9th Cir. 2017) .............................................................. 18

*Woods v. Dahlberg*,
   894 F.2d 187 (6th Cir. 1990) .............................................................. 20

## Statutes

28 U.S.C. § 636 ............................................................................. *passim*
28 U.S.C. § 1291 ............................................................................ 1, 20
28 U.S.C. § 1915 ............................................................................... 42
42 U.S.C. § 1331 ................................................................................. 1
42 U.S.C. § 1983 ........................................................................... 1, 23

## Other Authorities

DC-ADM 001 .............................................................................. *passim*
DC-ADM 804 .............................................................................. *passim*
D. Del. RULE 73.1 ............................................................................ 33
D.N.J. Civ. RULE 73.1 ....................................................................... 33
E.D. Pa. LR 72.1 ............................................................................... 33
Fed. R. Civ. P. 41 ............................................................................. 20
Fed. R. Civ. P. 72 ............................................................................. 31
Fed. R. Civ. P. 73 ........................................................................ *passim*
Fed. R. Civ. P. 73.1 .......................................................................... 33
M.D. Pa. LR 73.1 ............................................................................. 33

M.D. Pa. Standing Order 2022-19 ........................................................... 33

Pennsylvania Department of Corrections policies
https://www.cor.pa.gov/About%20Us/Pages/DOC-Policies.aspx .........................46

U.S. Courts Service & Forms, AO 85, https://www.uscourts.gov/forms/civil-
forms/notice-consent-and-reference-civil-action-magistrate-judge ...................... 33

W.D. Pa. LCvR 10 ................................................................................. 31

W.D. Pa. "Consent to Jurisdiction by United States Magistrate Judge/District Judge
Option," https://www.pawd.uscourts.gov/forms/consent-jurisdiction-united-states-
magistrate-judgedistrict-judge-option .................................................. 32

## STATEMENT OF JURISDICTION

In these three consolidated 42 U.S.C. 1983 cases, the district courts had jurisdiction under § 1331 but final judgments were entered by magistrate judges who lacked jurisdiction to do so because all parties had not consented to final magistrate judge resolution. JA(Prater)-3, 6; JA(Vaughan)-15; JA(Vaughn)-2, 18. All notices of appeal were timely. JA(Prater)-1; JA(Vaughan)-1; JA(Vaughn)-1. This court has appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 636(c)(3).

## STATEMENT OF ISSUES

1.      Did the magistrate judges lack jurisdiction to issue final orders without the consent of all named parties?

2.      If the magistrate judges lacked the jurisdiction to issue these orders, may this Court vacate the orders and remand for further proceedings?

3.      If the magistrate judges did have jurisdiction to issue these final appealable orders, did they err on the merits?  Specifically:

- Did the magistrate judge err in concluding that Wayne Prater did not allege facts demonstrating that he was under imminent threat of serious physical injury, as necessary for him to proceed *in forma pauperis*?

- Did the magistrate judge err in ruling that Isaac Vaughan failed to exhaust administrative remedies?

- Did the magistrate judge err in ruling that Aaron Vaughn failed to exhaust administrative remedies?

## STATEMENT OF RELATED CASES

To *amicus* counsel's knowledge none of these consolidated cases have been before this Court previously and there are no related proceedings.

**INTRODUCTION**

28 U.S.C. § 636(c)(1) provides that "[u]pon consent of the parties" a United States magistrate judge may exercise full jurisdiction over cases designated by the district courts. Section 636(c)(2) clarifies that the parties shall be notified about the availability of magistrate judge resolution "at the time the action is filed," that "[t]he decision of the parties shall be communicated to the clerk of court," and that if at any later point the parties are again notified of the availability of a magistrate judge to decide their case, that notice "shall also advise the parties that they are free to withhold consent without adverse substantive consequences." The statute further provides that "[r]ules of court for the reference of civil matters to magistrate judges shall include procedures to protect the voluntariness of the parties' consent." *Id.* Federal Rule of Civil Procedure 73(b) implements those requirements by mandating that the clerk "must give the parties written notice of their opportunity to consent," that "the parties must jointly or separately file a statement consenting to the referral" and that the district judge and magistrate judge can be told about each party's election "only if all parties have consented to the referral."

This Court's recent decision in *Burton v. Schamp* held that a magistrate judge may not enter a final judgment if "any party directly affected by an order or a judgment issued by that magistrate judge" has not consented. 25 F.4th 198, 209 (3d Cir. 2022). This Court also explained that litigants' consent "cannot be implied from

3

their conduct," even though the defendants in the case had voluntarily appeared, filed motions to dismiss, and litigated for more than a year, through a successful summary judgment motion. *Id.* at 210. Consent to magistrate judge resolution could not be implied when there was "no indication in the record that the defendants ever received [the] notice" required by the statute, nor "that they were made aware of the need to consent and their right to refuse." *Id.*

These consolidated appeals can and should be resolved along the clear lines drawn in *Burton*. The magistrate judges lacked jurisdiction to enter final judgment in all three of these consolidated cases. Neither Wayne Prater nor any of the defendants in his case consented to a magistrate judge's jurisdiction. Isaac Vaughan and Aaron Vaughn signed bare-bones consent forms themselves, but many of the defendants in their cases did not. And nothing in the records of these cases demonstrates that all parties "were made aware of the need to consent and their right to refuse." *Id.*

Some out-of-circuit decisions adopt expansive conceptions of implied consent to magistrate judge jurisdiction. Those decisions are inconsistent with this Court's holding in *Burton*, and rest on a misunderstanding of *Roell v. Withrow*, 538 U.S. 580 (2003). In *Roell*, a closely divided Supreme Court held that implied consent was given when defendants were reminded, explicitly and repeatedly, by the magistrate judge that she was proceeding under § 636(c) consent authority, and litigated the

case all the way through trial and final judgment without correcting the magistrate judge's understanding. The *Roell* majority held that in those circumstances, where the litigants were repeatedly "made aware of the need for consent and the right to refuse it," their constitutional right to resolution by an Article III judge was "substantially honored." 538 U.S. at 590-91. But the Court also emphasized that "implied consent will be the exception, not the rule." *Id.* at 591 n.7. *Roell* does not transform the plain language of the statute and Rule 73(b) into an opt-out regime, in which mere participation in litigation before a magistrate judge constitutes constructive consent to the magistrate judge's final resolution of the case. And the records of these cases, in all events, fall far short of demonstrating implied consent.

The Court may also wish to exercise its supervisory authority to review the consent procedures employed by the district court. Unlike the procedures in other district courts in this circuit and beyond, the consent procedures of the Western District of Pennsylvania do not ensure that appropriate consent will be obtained.

The absence of consent means that the magistrate judge lacked jurisdiction to issue the challenged orders, and that this Court lacks jurisdiction as well. Nonetheless this Court has authority to say so, and to vacate the judgments entered in these cases. That is the usual remedy when a court enters a judgment without jurisdiction to do so, and the parties certainly cannot be left without recourse and subject to an unlawful judgment.

If this Court concludes that jurisdiction was appropriately exercised in any of these cases, it should reach the merits and reverse. Mr. Prater pled sufficient facts to establish an imminent threat of serious bodily injury. And summary judgment should not have been granted against Mr. Vaughan or Mr. Vaughn on exhaustion grounds because the Pennsylvania Department of Corrections ("DOC") does not require full grievance exhaustion in cases involving alleged inmate abuse.

## STATEMENT OF THE CASE

Because this Court noted specific interest in the jurisdictional issues presented by these appeals, the procedural facts are addressed first, followed by factual summaries of each appeal relevant to the merits.

**Proceedings Below**

*Wayne Prater*:

Wayne Prater filed suit in the Western District of Pennsylvania on February 7, 2019, naming the DOC and thirty-one other defendants who were correctional officers, prison administrators, and medical defendants. JA(Prater)-21. No form consenting to adjudication before a magistrate judge is apparent in the record.

On February 8, the magistrate judge concluded that Prater's complaint did not surmount the Prison Litigation Reform Act's "three strikes" rule, denied Prater's motion to proceed *in forma pauperis*, and instructed him to re-file upon payment of the full filing fee. JA(Prater)-3. Less than three weeks later, the magistrate judge

dismissed the case without prejudice for failure to prosecute and instructed the clerk to mark it closed. JA(Prater)-6. No defendants were served prior to the magistrate judge's dismissal. JA(Prater)-3.

This Court granted Prater's motion to proceed *in forma pauperis* on appeal. JA(Prater)-179.

*Isaac Vaughan*:

On April 19, 2018, Isaac Vaughan transmitted his original complaint and the court's standard form consenting to magistrate judge resolution to the Western District. JA(Vaughan)-38, 42. The only defendant listed in Mr. Vaughan's original *pro se* complaint was Albion Prison, though the complaint alleged offenses by yet un-named correction officers and staff. JA(Vaughan)-38. On August 22, Deputy Attorney General Sandra Kozlowski entered her appearance and filed a consent to magistrate judge jurisdiction on behalf of defendant SCI-Albion. JA(Vaughan)-53, 55, 56.

After the magistrate judge granted SCI-Albion's motion for a more definite statement, Mr. Vaughan filed an amended complaint naming fourteen individual defendants including correctional officers, prison administrators, and medical personnel. JA(Vaughan)-64.

SCI-Albion moved again for a more definite statement on November 28, acknowledging that "[u]ndersigned counsel only represents SCI-Albion at present."

JA(Vaughan)-73. The magistrate judge denied SCI-Albion's motion, holding that the amended complaint sufficiently set forth "the parties being sued, the facts, and the general legal claims against them." JA(Vaughan)-76. On December 27, the magistrate judge directed service on the fourteen individual defendants. JA(Vaughan)-77.

In January 2019, SCI-Albion filed a notice substituting Scott A. Bradley as counsel of record for the prison. JA(Vaughan)-79. The filing did not identify any individual defendant as represented by new counsel. *Id.*

In February Scott Bradley filed an appearance, JA(Vaughan)-96, on behalf of some additional defendants. The *thirteen* defendants listed in his appearance, however, do not match the *fourteen* individual defendants named in the magistrate judge's December order. JA(Vaughan)-77, 96.

On March 20, Deputy Attorney General Timothy Mazzocca was substituted as counsel for SCI-Albion and all fourteen individual defendants. JA(Vaughan)-99. Mazzocca filed an answer for Albion Prison, et al. on March 29. JA(Vaughan)-102. Justin A. Gayle later appeared on behalf of all defendants. JA(Vaughan)-107.

At no point, however, did any of these counsel file consent forms on behalf of the individual defendants. The record also contains no indication that the district court ever notified these additional parties or their twice-or-thrice-substituted counsel of the need to consent to magistrate judge jurisdiction and their right to refuse.

The magistrate judge granted summary judgment for all defendants on March 26, 2020. JA(Vaughan)-6, 15.

*Aaron Vaughn*:

Aaron Vaughn filed his original complaint and form consenting to magistrate judge jurisdiction on April 27, 2017. JA(Vaughn)-76, 98.

Senior Deputy Attorney General Mary Friedline entered an appearance in September 2017 on behalf of Robert Gilmore and SCI-Greene JA(Vaughn)-149, and filed the consent form for them. JA(Vaughn)-151. As of May 2018, those were the only two defendants served. JA(Vaughn)-179.

Vaughn filed an amended complaint on April 9, 2018, identifying thirty-three officers and staff of SCI-Greene, eight groups of John / Jane Doe defendants which included officers and medical staff of the facility, and the institution itself. JA(Vaughn)-163. Thirty-four parties were served based on the U.S. Marshal's return of complaint, notice, and waiver mailings, including the previously served Robert Gilmore and a committee of the institution. JA(Vaughn)-181-214. Counsel for the Commonwealth filed appearances on behalf of thirty-one more individual defendants. JA(Vaughn)-215-20. No consent form was filed on behalf of any of these additional defendants.

The Commonwealth moved to dismiss Vaughn's claims with respect to twenty-six individual defendants but admitted that a claim capable of surviving a

12(b)(6) motion was made against six others. JA(Vaughn)-221. Defendant Varner separately moved to dismiss JA(Vaughn)-224-30; no consent form was filed on Varner's behalf. Deputy Attorney General Mazzocca was then substituted as counsel for all defendants. JA(Vaughn)-233. No consent form was filed on behalf of any of the additional defendants at this time, either.

The magistrate judge granted the motions to dismiss but permitted Mr. Vaughn to file a second amended complaint containing only an excessive force claim against one defendant, CO Gill, and claims concerning conditions of confinement. JA(Vaughn)-2. Mr. Vaughn's second amended complaint also identified one of the John Doe defendants as CO Johnston, but Johnston was not subsequently served. JA(Vaughn)-240. The magistrate judge ultimately granted summary judgment to all defendants (including *sua sponte* to Johnston). JA(Vaughn)-21.

Mr. Vaughn timely appealed. JA(Vaughn)-1.

**Statement of Facts Relevant to The Merits**

*Wayne Prater*:

Wayne Prater has been suffering from serious injuries to his right leg since he slipped in July 2016 while climbing down from the top bunk of his cell in SCI-Houtzdale, tearing his Achilles tendon. JA(Prater)-25-26.

About a month after his fall, Prater was scheduled for surgery to repair the damage. JA(Prater)-26. Prater alleges that two defendants intentionally canceled his

operation that morning because Prater asked to take a shower before surgery. JA(Prater)-26. Prater's surgery was rescheduled for late September. JA(Prater)-27. But Prater alleges that prison staff intentionally misled him to believe that he did not need to fast before the surgery. JA(Prater)-27. After several months of unnecessary delays, Prater's surgery eventually took place in late October 2016. JA(Prater)-27.

Prater alleges that the prison staff repeatedly placed him in conditions that exposed him to medical complications and re-injury. He also alleges that prison staff administered a pain medication that could induce a life-threatening allergic reaction. JA(Prater)-27. Prater alleges that following his surgery his open wounds were exposed to infection when he was placed in a "filthy and unsanitary cell" containing human waste and other sewage. JA(Prater)-28; *see also* JA(Prater)-153. Prater also alleges that his requests for cleaning supplies were denied, and that he was forced to clean a dirty toilet with his bare hands. JA(Prater)-153. He also expressed concerns that bacteria in the cell were comingling with his food, exposing him to a risk of deadly disease. JA(Prater)-153.

Prater further alleges that in the months following his surgery, defendants took actions to intentionally increase the chances of him reinjuring his right leg. He alleges that prison staff intentionally deactivated the emergency call button in his cell, resulting in delayed medical treatment after a second fall. JA(Prater)-27-28. Prater required the use of crutches to move about the prison grounds. JA(Prater)-28.

He alleges that prison staff were deliberately indifferent to his reduced mobility and caused him to maneuver across wet, icy, and snowy surfaces to obtain access to food and prescribed medication. JA(Prater)-28*; see also* JA(Prater)-166, 173. As a result, Prater suffered two more serious falls that caused him additional injuries. JA(Prater)-28. Prater also alleges that prison officials intentionally put him in harm's way by forcing him to move to a cell that would require him to maneuver greater distances on crutches. JA(Prater)-28.

Concerned about the threat of further reinjury and the denial or delay of further medical care, Prater initiated this action on February 7, 2019. His complaint alleges that the defendants have maintained an "ongoing" pattern of action that has placed him under imminent threat of physical harm. JA(Prater)-29.

*Isaac Vaughan*:

Isaac Vaughan filed this suit in April 2018, alleging that he suffered from a campaign of harassment that culminated in two assaults in January and February of 2018. He claims that on January 14 officers entered his cell, sprayed him with pepper spray, and physically beat him for five minutes. JA(Vaughan)-66. In early February, officers allegedly again entered his cell, beat him for three minutes, shackled him and placed him in a restraint chair. JA(Vaughan)-66. While restrained, Vaughan claims that he was forced to inhale an unknown chemical that caused him to begin to lose consciousness. JA(Vaughan)-66.

Vaughan alleges that he attempted to notify prison officials about these abusive encounters, but his requests were ignored. After the February incident, Vaughan spoke to a nurse and another correctional officer and told them that he had suffered abuse from prison staff. JA(Vaughan)-268. Vaughan alleges that no one took his reports of abuse seriously; "they just overlooked it and let me sit in that cell." JA(Vaughan)-268. Vaughan later filed a grievance, but it was rejected as untimely. JA(Vaughan)-236-238. Vaughan's complaint states that he "talked to everyone he could" about the abusive conduct but failed to obtain recourse. JA(Vaughan)-67 (cleaned up).

*Aaron Vaughn*:

Aaron Vaughn filed this action following an alleged assault in November 2016. JA(Vaughn)-76, 83. Vaughn's Second Amended Complaint alleges that two officers, CO Gill and CO Johnston, attempted to provoke him and then subsequently slammed him to the floor and repeatedly beat him. JA(Vaughn)-240.

Following the assault, Vaughn submitted a written request to a staff member reporting "a severe abuse" that he suffered at the hands of correctional officers. JA(Vaughn)-484. Vaughn asked Staff Member Sokol for access to the abuse hotline to report the alleged assault. JA(Vaughn)-484. He also filed a grievance to report the abusive behavior and was informed that his grievance would be investigated. JA(Vaughn)-355-56. Over the coming months, Vaughn periodically enquired about

the status of the investigation, and prison officials repeatedly notified him that the investigation was ongoing. JA(Vaughn)-357-58..

The DOC completed its investigation of the excessive force incident in February 2017. JA(Vaughn)-298-304. Prison officials informed Vaughn on April 12, 2017, that his grievance would be denied. JA(Vaughn)-297. He filed this action on April 27.

## SUMMARY OF ARGUMENT

In these consolidated cases, the magistrate judges lacked jurisdiction to enter final judgment because consent was not secured from all parties.

This Court recently held in *Burton* that a magistrate judge lacks jurisdiction to enter final judgment if "any party directly affected by [the] order or a judgment" has not consented. 25 F.4th at 205, 209. That holding resolves these appeals. In *Prater*, the magistrate judge denied leave to proceed *in forma pauperis* and then dismissed for failure to prosecute without consent on record from *any* party. And in the *Vaughan* and *Vaughn* cases, all parties to the complaint had not filed consents to magistrate judge jurisdiction prior to dismissal.

It is not enough that *some* defendants in *Vaughan* and *Vaughn* had consented to magistrate judge jurisdiction. The Supreme Court's decision in *Roell* recognized that "implied consent" to magistrate judge jurisdiction occurs only in exceptionally rare circumstances, given the plain text of 28 U.S.C. § 636(c) and Rule 73(b) (not to

mention Article III). And this Court in *Burton* similarly held that any finding of implied consent requires proof that the party was at least made aware of the need to consent and the right to refuse without penalty. *Id.* at 211. Nothing in the records of these cases establishes a sound basis for finding implied consent under either *Burton or Roell.*

This Court should vacate the judgments in all three cases and remand them to the district court. Whenever the court below lacks jurisdiction, the Court of Appeals also lacks jurisdiction over *the merits* of the case. But the Court of Appeals always has jurisdiction to review whether it has jurisdiction. And it always has power to vacate an erroneous assertion of jurisdiction below. That conclusion is supported by the text and structure of § 636, and by a longstanding history and tradition of appellate courts vacating void judgments.

This Court may also wish to consider exercising its supervisory authority to review the consent procedures in place in the district courts of this circuit. Particularly in the Western District, those procedures do not consistently guarantee the informed consent that *Burton* requires.

If this Court finds no jurisdictional deficiency in the magistrate judges' judgments and reaches the merits, it should reverse in all three cases. Wayne Prater should have been permitted to proceed *in forma pauperis* because he alleged facts demonstrating an imminent threat of serious physical injury. And the defendants in

the *Vaughan* and *Vaughn* suits were not entitled to summary judgment based on failure to exhaust administrative remedies. The DOC has two overlapping administrative schemes for reporting prisoner abuse, and both Vaughn and Vaughan adequately invoked one of them.

## STANDARD OF REVIEW

This Court reviews *de novo* whether a magistrate judge had authority to enter final judgment. *Burton*, 25 F.4th at 205 n.9. This Court also reviews *de novo* a dismissal for failure to state a claim. *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000). The Court of Appeals has "plenary review with respect to the proper interpretation of the PLRA and its three strikes rule." *Dooley v. Wetzel*, 957 F.3d 366, 376 (3d Cir. 2020). This Court reviews the grant of summary judgment *de novo*, "draw[s] all reasonable inferences in favor of the nonmoving party," and applies *de novo* review to the district court's exhaustion determinations. *Hardy v. Shaikh*, 959 F.3d 578, 581 n.1, 584-85 (3d Cir. 2020). Additionally, "pro se complaints, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," and "pro se documents must be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

## I. THE MAGISTRATE JUDGES LACKED JURISDICTION UNDER 28 U.S.C. § 636(C)(1) TO ISSUE FINAL ORDERS IN THESE PRISONER CIVIL RIGHTS ACTIONS.

A United States magistrate judge can only acquire jurisdiction to issue final orders if consent is given by all parties. *See* 28 U.S.C. § 636(c)(1). "If the requirements of § 636(c)(1) are not satisfied, the 'magistrate judge [is deprived] of jurisdiction over the case.'" *Burton*, 25 F.4th at 205 (citation omitted).

*Burton* controls these consolidated appeals. Express consent was not obtained from all parties in any of these cases. And there is no sound basis for inferring *implied* consent here; these cases are a far cry from the narrow and peculiar circumstances the Supreme Court in *Roell* found to constitute implied consent.

The consent process implemented in the Western District of Pennsylvania also does not generate the necessary supporting evidence and does not appropriately implement the statute's command that "[r]ules of court for the reference of civil matters to magistrate judges shall include procedures to protect the voluntariness of the parties' consent." 28 U.S.C. § 636(c)(2).

### A. There Was No Express Consent to Magistrate Judge Jurisdiction from All Parties in Any of These Cases.

#### 1. Section 636(c) requires consent by any party, served or unserved, directly affected by a magistrate judge's final order or judgment.

In *Burton*, this Court joined other circuits in holding that the "parties" whose consent is required under § 636(c)(1) include "any party directly affected by an order

or a judgement issued by that magistrate judge." *Id.* at 209. This Court also specifically held that the term "parties" in § 636(c)(1) includes defendants who have not yet been served.

In the first of two cases consolidated in the *Burton* appeal, the magistrate judge had dismissed the complaint with prejudice "at the [PLRA] screening stage, before any of the defendants were served or provided consent." *Id.* at 203. In the second case, *Williams*, the magistrate judge had dismissed the plaintiff's claims against two defendants "at the screening stage before they were served," and granted summary judgment to a third "after she was served but before she consented to the magistrate judge jurisdiction." *Id.* The defendants in *Burton* contended that the statutory term "parties" should be interpreted "to require consent only from parties who have been served." *Id.* at 207. This Court rejected that proposal, favorably invoking precedent from other circuits holding that consent is necessary from defendants even when the case is dismissed at an early stage and defendants have not yet been served. *Id.* at 208-09 (citing *Williams v. King*, 875 F.3d 500, 504 (2017), and *Coleman v. Labor and Industry Review Commission*, 860 F.3d 461 (7th Cir. 2017)). This Court also explained that the consent rule applies without regard to outcome and cannot be "cured" after the fact; defendants may benefit from a pre-service dismissal of claims against them, but post-judgment consent to magistrate judge jurisdiction "is not permitted by the statutory text and raises constitutional problems under Article III."

*Id.* at 211. Absent all parties' consent, magistrate judges are restricted to submitting reports and recommendations on dispositive pretrial motions. *Id.* at 212; *see also, e.g., Branch v. Umphenour*, 936 F.3d 994, 1005 (9th Cir. 2019) (same).

## 2. No parties in Wayne Prater's case consented to the magistrate judge's jurisdiction.

This Court's holding in *Burton* controls Wayne Prater's case. Only one day after Prater submitted his complaint and motion to proceed *in forma pauperis*, the magistrate judge denied Prater's motion and instructed that he could proceed only by paying the filing fee. JA(Prater)-3. Twenty days later, the magistrate judge dismissed Prater's case without prejudice for failure to prosecute and instructed the clerk to mark the matter closed. JA(Prater)-6. There is no record even of *Prater* ever filing a consent form, much less the unserved defendants. *See* JA(Prater)-13-172. A magistrate judge cannot self-authorize subject matter jurisdiction under § 636(c)(1) ("This is a consent case" JA(Prater)-3), without any evidence of the requirements of § 636(c) being met. Just as in *Burton*, the magistrate judge's overreach should be corrected.

The dismissal of Prater's complaint and of the complaints in *Burton* rested on different grounds: Prater's complaint was dismissed without prejudice prior to service for failure to prosecute following the denial of his IFP motion, whereas in *Burton* claims were dismissed prior to service at the screening stage for failure to state a claim. That is a distinction without a difference. Absent consent under

§ 636(c)(1), magistrate judges lack power to "involuntarily dismiss an action." § 636(b)(1)(A). Dismissing Prater's complaint for failure to prosecute was plainly "involuntar[y]." The Sixth Circuit (at least) holds that denial of an IFP motion is the "functional equivalent of an involuntary dismissal," and thus "outside the scope" of a magistrate judge's § 636(b)(1)(A) authority. *Woods v. Dahlberg*, 894 F.2d 187, 187-88 (6th Cir. 1990); *see also, e.g., Hunter v. Roventini*, 617 Fed. Appx. 225, 226 (4th Cir. 2015) (same); *Donaldson v. Ducote*, 373 F.3d 622, 623–25 (5th Cir. 2004) (per curiam) ("we find no evidence that Donaldson consented to the magistrate judge's jurisdiction to enter a final judgment on his right to appeal IFP."). It also is established that an order denying leave to proceed in forma pauperis is a final, collateral order appealable under 28 U.S.C. § 1291. *See Roberts v. United States Dist. Court for the Northern Dist. Of Cal.*, 339 U.S. 844, 845 (1950); *Abdul–Akbar v. McKelvie*, 239 F.3d 307, 311 (3d. Cir. 2001).

Nor is it significant that Prater's case was dismissed without prejudice. A dismissal without prejudice is still an involuntary dismissal. *See Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987) (stating that 28 U.S.C. § 636(b) governs rulings on dismissals of *in forma pauperis* actions); Fed. R. Civ. P. 41(b) (suggesting that "involuntary dismissal" encompasses dismissals with and without prejudice).

The proper statute-, rule-, and constitution-abiding approach in Wayne Prater's case would have been for the magistrate judge to make a report and recommendation to the district court.

### 3. None of the later named additional defendants consented to magistrate jurisdiction in the *Vaughan* and *Vaughn* cases.

The *Vaughan* and *Vaughn* cases also fail *Burton*'s express consent requirements. *Burton* held that a magistrate judge lacks § 636(c) jurisdiction if "any party directly affected by [the] order or judgment" has not consented. 25 F.4th at 209. While the plaintiff and *some* defendants in the *Vaughan* and *Vaughn* cases submitted signed consent forms, additional defendants subsequently named in amended complaints did not. Both cases thus fail the "any party" test. Securing consent from some, but not all, defendants does not satisfy *Burton*, and it does not respect the plain language of 28 U.S.C. § 636(c) and Rule 73(b).

The right to an Article III adjudicator is a "personal right." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848 (1986). A court thus cannot presume that because any one defendant has consented, all have consented. Each defendant can face different claims and exposure, and each has an individualized interest in whether those claims are adjudicated before an Article I or Article III judge. And even defendants who secure a complete victory on the merits can be harmed by that judgment—when, for example, claim-preclusive consequences attach to unpled compulsory counterclaims. *See, e.g., Cold Metal Process Co. v. United Engineering & Foundry Co.*, 190 F.2d 217, 221 (3d Cir. 1951) (explaining that a compulsory counterclaim forgone in one proceeding "could not subsequently . . . be[ ] maintained" in another).

Other circuits have rejected efforts to impute consent from one defendant to another, even when those defendants had close connections. In *Mark I, Inc. v. Gruber*, for example, the Seventh Circuit held that even though an additional defendant had participated, as a 50% owner, in the corporation's decision to consent, the corporation's consent could not be attributed to him individually. 38 F.3d 369, 370 (7th Cir. 1994). And the Fifth Circuit has held that even when additional defendants are represented by the same counsel as the original consenting defendants, individualized consent is still required from those additional defendants. *Caprera v. Jacobs*, 790 F.2d 442, 443-44 (5th Cir. 1986).

### B. *Roell*'s Implied Consent Principle Does Not Create Magistrate Jurisdiction in These Cases.

In *Vaughan* and *Vaughn,* the government has argued that the consent of the additional defendants can be implied under *Roell v. Withrow.* This Court should reject that suggestion. As this Court's decision in *Burton* makes clear, *Roell*'s narrow holding was conditioned on factual circumstances not present in any of the three consolidated cases on appeal.

#### 1. *Roell*'s implied-consent holding is limited to exceptional situations in which all parties were individually made aware of the need to consent and right to refuse it, and signified consent by continued participation.

The Supreme Court's holding in *Roell* rested on unique facts showing that all defendants accepted the magistrate judge's jurisdiction by declining to object when

the magistrate judge said expressly, repeatedly, and throughout lengthy trial proceedings, that she was proceeding by consent under § 636(c)(1). If the Supreme Court's opinion in *Roell* left any doubt about the limited nature of its holding, moreover, this Court's opinion in *Burton* dispels it.

The plaintiff in *Roell* brought a § 1983 action against members of a prison's medical staff. 538 U.S. 580. During a preliminary hearing, the magistrate judge informed the parties that they could choose to have the magistrate judge preside over the entire case. *Id.* at 582-583. The plaintiff consented orally and later in writing, but the state attorney attending the hearing demurred, explaining that she would have to "talk to the attorneys who have been assigned the case to see if [defendants] will execute consent forms." *Id.* at 583. Without waiting, the district judge referred the case to a magistrate judge for final disposition, with the caveat that "all defendants [would] be given an opportunity to consent to the jurisdiction of the magistrate judge," and that the referral order would be vacated if any defendant did not consent. *Id.* One defendant represented by private counsel consented; the other two defendants – Roell and Garibay – were represented by a state attorney and filed answers without mention of consent. *Id.*

On at least three separate occasions, "counsel for Roell and Garibay was present and stood silent when the Magistrate Judge stated that they had consented to her authority." *Id.* at 584 n.1. In a status teleconference, the magistrate judge stated

that "all of the other parties have consented to my jurisdiction." *Id.* In denying a motion for summary judgment, the magistrate judge explicitly referenced the case as proceeding under the jurisdiction granted in 28 U.S.C. § 636(c)(1). *Id.* And during jury selection, the magistrate judge asserted without objection that both sides had consented to her jurisdiction to hear the case. *Id.* The case thus proceeded in front of the magistrate judge through trial, a jury verdict, and judgment for the defendants. *Id.* It was only on appeal that the Court of Appeals *sua sponte* raised the question whether all parties consented to the magistrate judge's jurisdiction. *Id.* at 583.

After a detailed review of the facts, five Supreme Court Justices concluded that "the better rule is to accept implied consent where, as here, the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the magistrate judge." 538 U.S. at 590. The Court's holding thus rested on the fact that the litigants had repeated verbal notice, throughout lengthy proceedings, that the magistrate judge was operating on the understanding that they consented to her resolution of the case under § 636(c)(1). The *Roell* magistrate judge did not quite say "speak now, or forever hold your peace," but that was the clear implication of statements directly addressing the § 636(c)(1) issue made repeatedly in the presence of defendants' counsel, all the way through trial.

Four Justices dissented in *Roell*, observing that implied consent under *any* circumstances was a plain violation of the statute and the Rules: Section 636(c)(1) provides that magistrate judges can exercise full civil jurisdiction only "[u]pon the consent of the parties," and Rule 73(b) explicitly says that "the clerk must give the parties written notice of their opportunity to consent" and that to signify their consent, the parties must jointly or separately file a statement consenting to the referral. *Id.* at 594 (Thomas, J., dissenting)**.** The *Roell* dissent also observed that recognizing implied consent raised serious Article III concerns, *see id.* at 595-97 (Thomas, J., dissenting) – concerns the *Roell* majority did not do much to dispel in concluding that its narrow ruling would "*substantially* honor[ ]" the Constitution. *Id.* at 590 (emphasis added).

The question that so closely divided the Supreme Court in *Roell*, then, was not about weighing evidence of implied consent. The hard question in *Roell* was whether to tolerate implied consent *at all*. The majority's admonition that "implied consent will be the exception, not the rule," and its firm reminder that "district courts remain bound by the procedural requirements of § 636(c)(2) and Federal Rule of Civil Procedure 73(b)," *Id.* at 591 n.7, should be understood in that context.

This Court recognized in *Burton* that *Roell*'s narrow holding was conditioned on "certain circumstances"—namely where "'the litigant or counsel *was made aware of the need for consent and the right to refuse it*, and still voluntarily appeared

to try the case before the magistrate judge.'" *Burton*, 25 F.4th at 210 (quoting *Roell*, 538 U.S. at 590) (emphasis in *Burton*). All three defendants in the *Burton* appeals had voluntarily appeared to file motions to dismiss; one defendant continued to litigate for more than a year, through a successful summary judgment motion. 25 F. 4th at 204-05. This Court nonetheless held that the defendants' consent "cannot be implied from their conduct"; there was "no indication in the record that the defendants ever received [the] notice" required by § 636(c)(2), and they "d[id] not point to anything in the record showing that they were made aware of the need to consent and their right to refuse." *Id.* at 210. Instead "the record here shows only that the defendants were aware of being sued" and chose to participate. *Id.* This Court reasoned that "[u]nder these circumstances, *Roell* bars us from inferring, from the defendants' conduct, their consent to proceed before a magistrate judge." *Id.* at 210-11. Nor, this Court went on, could a winning party cure that fundamental jurisdictional deficiency with post-judgment consent. *Id.* at 211-12.

## 2. *Roell*'s implied consent principle does not apply to these cases.

To our knowledge, the Commonwealth has not previously argued that Mr. Prater's consent can be implied simply from submitting a complaint to the district court. No such inference would be tenable. Nor can any consent be implied from the defendants' conduct; the complaint was dismissed before they took any action at all.

*Vaughn* and *Vaughan* are far closer to the appeal in *Burton*, where this Court rejected any finding of implied consent, than to the unique array of facts in *Roell*. There is no record here that the magistrate judge repeatedly discussed with all parties, even once (much less *three times*, as in *Roell*), that the case was proceeding pursuant to all parties' consent to the magistrate judge's jurisdiction.

The Commonwealth has contended, in April 12, 2022 response letters to this Court, that because the additional defendants are all represented by the Attorney General's office, which had previously filed consent forms for some defendants, *Roell*'s requirement that "the litigant or counsel was made aware of the need for consent and the right to refuse it" was met. 3d Cir. Docs. 28, 22 (citing *Davis v. Harlow*, 632 Fed. Appx. 687, 689 n.1 (3d Cir. 2015) (per curiam); 538 U.S. at 590). Again, however, none of that meaningfully distinguishes this case from the *Williams* appeal consolidated with *Burton*, where two unserved defendants shared counsel with the one defendant who was served. *Id.* at 204. It cannot be correct that filing consent for one defendant automatically transfers to subsequent defendants represented by the same counsel, especially on a limited procedural record where dispositive motions are filed prior to all named parties in the litigation being served. That presumption would be half a step from assuming knowledge of the need to consent and right to refuse it merely from the fact that attorneys are familiar with the local rules. Hiring (or being assigned) the same lawyer as prior defendants does not

demonstrate a party's voluntary choice to forgo litigation of claims before an Article III judge. *See Burton*, 25 F.4th at 206.

The chaotic nature of the representation of the parties in these cases also undermines any suggestion that counsel's initial consent filings were sufficient to imply consent for all additional parties. In the *Vaughan* case, several substitutions of counsel occurred between the filing of the original defendant's consent form and the dispositive motions and orders; one of the defendants was never accounted for in any notice of appearance. JA(Vaughan)-53, 56, 73, 77, 79, 96, 99, 102, 107. In the *Vaughn* case, counsel entered notices of appearance for most additional defendants, but needed clarification of the record to even find out who they were— and even then defendant Johnston, who was identified in the final amended complaint, was never represented prior to the *sua sponte* judgment on the claims against him. JA(Vaughn)-151, 179, 181-220, 224-30, 233, 240. This disjointed process does not support an inference that each individual defendant was notified of and consented to magistrate judge resolution. Even the stand-in government counsel early in the *Roell* proceedings, after all, acknowledged on the record a need to confer with each of the litigants about whether to execute consent forms. *See* 538 U.S. at 583.

*Amicus* counsel has found no record evidence that consent forms were ever even sent to the individual defendants. And if the forms *were* sent, the fact that they

28

were not signed or returned supports (if anything) an inference that consent to magistrate judge jurisdiction was intentionally withheld. The statute requires affirmative consent, not the absence of objection. And a district court cannot convert a statutory, opt-in regime into a DIY opt-out regime just by mailing a piece of paper. *See Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1017 (11th Cir. 2007) (noting that courts "are not empowered to rewrite statutes" and refusing "to convert a statutory opt in requirement [for FLSA claims] into an opt out one").

Further, mere participation in pre-trial litigation before a magistrate judge does not imply consent to the magistrate judge issuing final judgments. District courts have authority to "designate" cases or classes of cases in which magistrate judges will resolve certain pretrial matters and make recommendations about dispositive motions, including summary judgment. 28 U.S.C. § 636(b)(1). Those designations do not require consent, and parties are normally obligated to file motions and participate in hearings when a magistrate judge is operating under a § 636(b) designation. Doing so does not imply consent to the magistrate judge actually entering judgment. In *Roell*, the parties' continued participation could imply consent to final magistrate judge resolution only because the magistrate judge specifically clarified that she was proceeding on the understanding of § 636(c) consent authority and then actually conducted a trial. In these cases, by contrast, many of the magistrate judges' orders referenced § 636(b) authority, *see, e.g.*, JA(Vaughn)-143,

and the cases did not proceed beyond briefing dispositive motions. There was no clear indication to the parties that the magistrate judge intended to exercise § 636(c) authority, as there were in *Roell*.

Finally, unlike in *Roell*, nothing in the records of these cases would support an inference that these litigants were made aware of their right to refuse magistrate judge resolution without penalty—a safeguard that Congress viewed as essential to ensure that consent is informed and voluntary. *See Roell*, 538 U.S. at 590; 28 U.S.C. § 636(c)(2). Even if there were evidence that the consent forms were sent to all parties, the forms provide no explanation that magistrate judge jurisdiction requires the consent of all parties or that consent may be refused without consequences. Absent those statutorily required clarifications, there is no basis for an inference of *voluntary* consent.

Inferring consent from nothing more than a prior consent form for different defendants, from a notice of appearance, or from the filing of dispositive motions "pushes us from implicit consent to assumed or hypothetical consent." *Coleman v. Labor and Industry Review Comm. of Wisconsin*, 860 F.3d 461, 470 (7th Cir. 2017). This Court firmly rejected that path in *Burton*, faithful to the Supreme Court's admonition that implied consent must remain the "exception, not the rule." *Roell*, 538 U.S. at 591 n.7.

**C.     This Court Should Consider Using Its Supervisory Authority to Review the District Court's Consent Procedures.**

The absence of adequate record evidence of consent in this case appears to be the product of inadequate procedures followed in the Western District of Pennsylvania. This Court may consider reviewing the procedures employed in that and other district courts of this circuit pursuant to its supervisory authority, to minimize recurrences of the problem presented here.

28 U.S.C. § 636(c)(2) and Rule 73(b) emphasize that local court rules must include procedures to protect the voluntariness of consent and the right to withhold consent without penalty. The Western District's local rules, however, provide that "[a]ll prisoner civil cases and non-death penalty habeas cases will be assigned only to a Magistrate Judge." *See* W.D. Pa. LCvR 10, 72(G). The rules do not appear to acknowledge the timing contemplated by 28 U.S.C. §§ 636(c)(1) and (c)(2)—that cases designated for magistrate judge resolution should actually be referred to magistrate judge only *after* the consent of the parties has been obtained. Nor does it take into account Rule 73(b)'s requirements that the clerk must give written notice of the opportunity to consent, collect responses, and notify the magistrate judge of the responses "only if all parties have consented the referral." The Western District's Rules also include no instructions for giving notice to the parties of their right to refuse and of the lack of adverse consequences should they refuse, as required by § 636(c)(2) and Rule 73(b)(2). *See* W.D. Pa. LCvR 10(E).

The Western District's standard consent form is in the appendix at JA(Vaughn)-135. Part 1 contains no disclosure that the magistrate judge's jurisdiction is predicated on the consent of all parties, and no advisement that the party is free to withhold this consent without adverse substantive consequences.[1] The form does give litigants an unexplained option to proceed before a magistrate judge or a district court judge. But without the necessary disclosures and advisement, the form does not provide litigants with sufficient information and context for an election to evidence a truly *voluntary* waiver of important procedural and constitutional rights.

In evaluating the Western District's rules and processes, this Court can and should take judicial notice of the applicable rules and consent forms used in the other districts of this circuit. Most other districts' local rules comply with the requirements of § 636(c)(2) and Rule 73(b) by laying out a three-step process for civil consent cases: (1) notice of the availability of a magistrate judge, (2) detailed requirements for collecting actual written consent from all parties, and (3) specific instructions for

---

[1] *See* W.D. Pa. "Consent to Jurisdiction by United States Magistrate Judge/District Judge Option," https://www.pawd.uscourts.gov/forms/consent-jurisdiction-united-states-magistrate-judgedistrict-judge-option. There is also a joint form, but it mirrors this format.

reference to a magistrate judge only after that written consent has been secured.[2] The rules often direct that the magistrate judge may establish a deadline for consent, but critically they instruct litigants that "they are free to withhold consent without adverse substantive consequences."[3]

Most other districts' consent forms are modeled on the standardized form AO 85 (with minor formatting differences) from the Administrative Office of the United States Courts.[4] The AO 85 form notifies the parties that the magistrate judge's authority is vested only if all parties consent, advises that parties are free to withhold consent without substantive adverse consequences, and re-assures the parties that the name of any party withholding consent will not be revealed to the judges. In amicus counsel's view, the AO 85 form satisfies the voluntariness protections required by § 636(c) and Fed. R. Civ. P. 73(b).

---

[2] *See* M.D. Pa. LR 73.1; E.D. Pa. LR 72.1(III)(b); D.N.J. Civ. RULE 73.1; D. Del. RULE 73.1. The District of the Virgin Islands has an abnormally truncated rule. *See* Civ. Proc., Rule 73.1.

[3] *See, e.g.,* M.D. Pa. LR 73.1; M.D. Pa. Standing Order 2022-19 designates a separate consent form for direct assignment cases that is similar to the W.D. Pa. form, but it does inform the parties that they are free to withhold consent without adverse consequences.

[4] *See* U.S. Courts Service & Forms, AO 85, https://www.uscourts.gov/forms/civil-forms/notice-consent-and-reference-civil-action-magistrate-judge. The District of the Virgin Islands does not appear to display a public link to a consent form.

This Court would not be the first circuit to examine its constituent district courts' voluntariness protections. In *Anderson v. Woodcreek Venture LTD*, for example, the Ninth Circuit held that it could not find evidence of *voluntary* consent, express or implied, even where the plaintiff filed a signed consent form. 351 F.3d at 911, 915 (9th Cir. 2003). The Ninth Circuit noted that the district court's notice form was addressed to "counsel," contained only a bare citation to Rule 73(b), and stated that "[t]he above referenced case *has been assigned* to the presiding judicial officer shown below for disposition," without reference to consent, other than in a short footnote. *Id.* (emphasis added). The district court's form also was "ambiguous as to whether the assignment is partial and unclear on whether full magistrate judge jurisdiction is contingent upon the parties expressing their voluntary consent." *Id.* The consent forms also failed to expressly advise that the plaintiff was "free to withhold consent without adverse substantive consequences," as required under § 636(c)(2). *Id.*

The Western District of Pennsylvania consent form has all the same inadequacies as the *Anderson* form. It gives no notice that jurisdiction does not vest unless all parties consent; no assurance of the right to withhold consent without consequences; and no notice of whether or not the judge will see their refusal.[5]

---

[5] Amicus counsel has attempted to review the publicly available rules and orders, but acknowledges that the District Court could have additional internal policies surrounding how consent is obtained.

Without those safeguards, litigants may "[feel] compelled to manifest 'consent' to the magistrate judge's authority to enter judgment," *see Anderson*, 351 F.3d at 919. This is precisely the "concern about the possibility of coercive referrals" that the *Roell* majority stressed must be avoided. 538 U.S. at 589.

This Court should exercise its supervisory power to review the consent procedures and forms in the Western District of Pennsylvania and other districts of this Circuit, to ensure that the statutory commands to protect the voluntariness of consent are followed. Without such guidance, the *Roell* dissent's forecast of secondary litigation over implied consent ambiguities will persist. *See id.* at 591 n.7.

## II. WHEN A MAGISTRATE JUDGE ENTERS A JUDGMENT UNDER § 636 WITHOUT FIRST OBTAINING ALL PARTIES' CONSENT, THE PROPER REMEDY IS TO VACATE THE DECISION BELOW.

This Court has appellate jurisdiction to vacate the decision below. The Court of Appeals has jurisdiction over any appeal from cases *referred to* a magistrate judge. Appellate jurisdiction to vacate a void judgment exists independently of whether the magistrate judge properly exercised subject matter jurisdiction. And longstanding historical practice reflects that appellate courts have a supervisory power to vacate decisions improperly rendered by inferior courts. A contrary conclusion here would yield absurd results and raise serious constitutional concerns.

**A.     The Text and Structure Of 28 U.S.C. § 636 Support This Court's Appellate Jurisdiction to Vacate Judgments That Are Void for Lack of Subject Matter Jurisdiction.**

Section 636 vests this Court with appellate jurisdiction to vacate void judgments entered by a magistrate judge.

Congress describes the process of passing a case from a district court judge to a magistrate judge as a "reference." *See* § 636(c)(2) (detailing procedures regarding "the reference of civil matters to magistrate judges"); § 636(c)(4) (explaining when a district court may "vacate a reference of a civil matter to a magistrate judge"). Consent of the parties is a prerequisite for a *valid* reference. But the reference itself is a distinct step in the process.

A party may appeal directly to the Court of Appeals "upon entry of judgment in any case referred" to a magistrate judge under § 636(c)(1). Whether a case was *properly* referred to a magistrate judge is irrelevant to this Court's exercise of appellate jurisdiction. The question is simply whether a magistrate judge, acting under the color of § 636(c)(1), entered a judgment. Congress could have provided that the Court of Appeals may only exercise appellate jurisdiction upon "entry of judgment in any case *validly* referred under" § 636(c)(1). But it chose not to. The statute is clear, and this court's inquiry can thus begin and end "with the statutory text." *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).

Statutory provisions also should not be read in isolation; rather, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1888 (2019) (quoting *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012)). The overall structure of the Federal Magistrates Act supports the same conclusion. Congress intended for magistrate judge-supervised proceedings, including appeals, to proceed identically to cases before a district court judge. *See* § 636(c)(3). And it is common practice that when a district court lacks jurisdiction to enter a judgment the court of appeals may exercise jurisdiction over the appeal in order to reverse and direct dismissal. *See Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200 (3d Cir. 2021). It would be incongruous to conclude that Congress intended to prevent the Court of Appeals from correcting void judgments in § 636(c) cases, when it otherwise endeavored to make those cases just like any other.

A contrary reading would contradict the Court's "obligation to construe statutes sensibly and avoid constructions which yield absurd or unjust results." *United States v. McKie*, 112 F.3d 626, 631 (3d Cir. 1997). Congress obviously did not intend to create a jurisdictional black hole in which magistrate judges lacking jurisdiction over the case could nonetheless enter binding final judgments that the Court of Appeals is powerless to review or correct. Any such holding also would raise serious constitutional concerns. *See Gomez v. United States*, 490 U.S. 858, 864

(1989). "Article III protects liberty not only through its role in implementing the separation of powers, but also by specifying the defining characteristics of Article III judges." *Stern v. Marshall*, 564 U.S. 462, 483 (2011). The Supreme Court has never approved *any* scheme that would completely eliminate Article III review of a final decision by a magistrate judge.[6] A reading of § 636(c)(3) that ties appellate jurisdiction to whether the case was referred to a magistrate judge (properly or improperly) is reasonable and avoids those serious constitutional concerns.

## B.    Appellate Courts Have Supervisory Power to Vacate a Void Judgment.

Even if this Court lacked statutory appellate jurisdiction, it would still have supervisory power to vacate a void judgment entered by an inferior court.

An appellate court's supervisory power is distinct from its subject matter jurisdiction. Subject matter jurisdiction is "the power to hear and determine the subject matter in controversy between parties to a suit; to adjudicate or exercise any judicial power over them." *Rhode Island v. Massachusetts*, 37 U.S. 657, 714 (1838); *see also The Resolute*, 168 U.S. 437, 439 (1897) ("Jurisdiction is the power to adjudicate a case upon the merits, and dispose of it as justice may require."); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (jurisdiction is the

---

[6] *See*, *e.g.*, *Roell*, 538 U.S. at 585 n.2 (litigants may always appeal to the Court of Appeals and seek review by the Supreme Court); *United States v. Raddatz*, 447 U.S. 667, 682-83 (1980) (magistrate judge's decision in a suppression hearing was subject to *de novo* review by the district court judge).

"statutory or constitutional power to adjudicate the case"). A court must dismiss a case when it lacks subject matter jurisdiction because it has no power to resolve the controversy between the parties before the court.

Beginning as early as the 1870's, however, the Supreme Court has repeatedly recognized that appellate courts have supervisory power to vacate the decisions of inferior courts that lacked subject matter jurisdiction, even when they otherwise lack appellate jurisdiction. In *Stickney v. Wilt*, 90 U.S. 150 (1874), the Supreme Court vacated the decision of a Circuit Court despite the fact that both the Circuit Court and the Supreme Court lacked appellate jurisdiction. The district court had resolved disputes about the validity of liens in bankruptcy. *Id.* at 153-54. Under then-governing bankruptcy law, the district court's decision was not appealable to the circuit courts or to the Supreme Court. *Id.* at 160-61. Nevertheless, the Circuit Court for the Northern District of Ohio erroneously granted an appeal and modified the decision of the district court. *Id.* at 153.

The Supreme Court reversed. It recognized that when "both the Circuit Court and this court are without jurisdiction it is in general irregular to make any order or decree in the case, except to dismiss the suit." *Id.* at 162. However, a "necessary exception exists to that rule where the consequence of a decree of dismissal will be to give full effect to an irregular and erroneous decree of the subordinate court in a case where the decree is entered without jurisdiction." *Id.* The Court stressed that it

would be a "great injustice" to allow a litigant to enjoy the full benefit of a judgment rendered by a court that had no jurisdiction to hear the controversy. *Id.* at 162-63.

In *Gully v. Interstate Natural Gas Co.*, 292 U.S. 16 (1934), a natural gas company sued to enjoin state officers from assessing the value of its property. *Id.* at 17. The district court erroneously assembled a three-judge panel to hear the case, but because "there was no occasion for constituting a court of three judges" under the relevant statute the case could not be directly appealed to the Supreme Court. *Id.* at 17-18. Nevertheless, since the panel purported to be operating pursuant to the statutory scheme that enabled direct appeals from three-judge district court panels, the Supreme Court ruled that it "necessarily has jurisdiction to determine whether the court below has acted within the authority conferred" by the statute and to "make such corrective order as may be appropriate." *Id.* at 18.

Similarly, the Supreme Court vacated a district court decision in *United States v. Corrick*, 298 U.S. 435 (1936), despite lacking jurisdiction over the appeal. Appellees in *Corrick* sought to enjoin the Secretary of Agriculture from prosecuting them for violations of the Packers and Stockyards Act. *Id.* at 436. The Supreme Court ruled that the panel in the district court lacked subject matter jurisdiction. *Id.* at 439. Nevertheless, the Court reversed the judgment, exercising "jurisdiction on appeal, not of the merits, but merely for the purpose of correcting the error of the lower court in entertaining the suit." *Id.* at 440; *see also Phillips v. United States*, 312 U.S. 246

(1941) (vacating decree from a three-judge panel where panel lacked subject matter jurisdiction); *William Jameson & Co. v. Morgenthau*, 307 U.S. 171 (1939) (same).

The rationale for all of these decisions is best summarized in *Walling v. James V. Reuter, Inc.*, where the Supreme Court noted that "where for any reason [the Court] is without power to proceed with the appeal, it may nevertheless, in the exercise of its supervisory appellate power, make such disposition of the case as justice requires." 321 U.S. 671, 676 (1944). The Court specifically noted that if a court is without jurisdiction to decide an appeal it may "vacate the judgment and remand the cause in order to enable the court below to enter a new judgment from which a proper appeal may be taken." *Id.* at 677.

This Court need not tolerate the "great injustice" that would result if parties were bound by the judgment of a tribunal that had no jurisdiction to hear the controversy in the first place. *Stickney*, 90 U.S. at 162. If this Court reads § 636 to deprive it of full appellate jurisdiction, it should exercise its supervisory power to vacate the void judgments rendered below.

## III.   THE MAGISTRATE JUDGES ERRED IN DISMISSING PRATER'S COMPLAINT AND IN GRANTING SUMMARY JUDGMENT AGAINST VAUGHN AND VAUGHAN.

If this Court concludes that the magistrate judges in these consolidated cases had jurisdiction and reaches the merits, it should reverse. Prater alleged facts demonstrating that he was in imminent danger of serious physical injury and should

have been allowed to proceed IFP. Vaughan and Vaughn both sufficiently exhausted their available administrative remedies by complying with the DOC's procedures for reporting inmate abuse.

### A. Prater Alleged Facts Demonstrating Imminent Danger of Serious Physical Harm.

Prater has three PLRA "strikes"; he therefore can proceed *in forma pauperis* only if he faced imminent danger of serious physical harm. *See* 28 U.S.C. §1915(g). Accepting the factual allegations of his complaint as true, he made the necessary showing.

A prisoner is under imminent danger of serious physical injury when he or she is denied treatment for a serious injury or placed in conditions that will worsen an existing injury. *See, e.g.*, *Hall v. United States*, 44 F.4th 218, 227 (4th Cir. 2022). Prater's complaint alleged a continuous pattern of deliberate indifference to his serious medical needs, including the denial of medical treatment and exposure to conditions that worsened his injuries. The dangers to Prater's health began after he suffered a fall that severed his right Achilles tendon. Following this injury, he alleges a pattern of intentional delays and conditions that increased his risk of reinjury. JA(Prater)-26-28. Prater alleges that on two occasions defendants intentionally delayed surgery to retaliate against him; that defendants intentionally turned off the emergency call button in his cell making him unable to call for help after a second fall; that he was placed in an unsanitary cell despite having an open wound and was

42

exposed to sewage and other human waste; that prison staff caused him to travel across untreated sidewalks covered in snow and ice resulting in a third fall; and that prison staff retaliated against him by moving him to a new cell that required him to travel greater distances on crutches, resulting in a fourth fall. Prater alleges that this pattern of deliberate indifference to his medical needs continued until the filing of his complaint.

The Fourth Circuit recently vacated a district court decision to deny an IFP motion after the prisoner alleged that the prison caused a material delay in providing him lumbar surgery. *Hall*, 44 F.4th at 229. The Eighth Circuit has similarly held that a prison's failure to extract a prisoner's two infected teeth constituted danger of serious physical injury because of the risk of spreading infection. *McAlphin v. Toney*, 281 F.3d 709 (8th Cir. 2002). The Ninth, Eleventh, and D.C. circuits have all held that a failure to treat or prevent the spread of serious illnesses such as HIV and hepatitis constitutes danger of serious physical injury. *See Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007); *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004); *Ibrahim v. District of Columbia*, 463 F.3d 3, 6-7 (D.C. Cir. 2006). And the Sixth Circuit has ruled that "a failure to treat a chronic illness or condition satisfies the imminent-danger exception" to § 1915(g) and granted an IFP motion after the plaintiff alleged that the prison failed to provide him with physician-prescribed shoes, a transport vehicle, and a special diet and medication. *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 587 (6th Cir. 2013).

This Court has held that the danger to the inmate must be imminent at the time that the defendant filed the complaint. *Abdul-Akbar v. McKelvie*, 239 F.3d 307 (3d Cir. 2001). But an ongoing pattern of conduct that puts the prisoner at risk of serious injury can demonstrate an imminent danger. *See id.* at 315 n.1 (noting that an ongoing "pattern of threats of serious physical injury" could potentially satisfy § 1915(g)). *See also, e.g., Andrews*, 493 F.3d at 1056-57 ("a prisoner who alleges that prison officials continue with a practice that has injured him or others similarly situated in the past will satisfy the 'ongoing danger' standard"); *Hall*, 44 F.4th at 225 (alleged assault on a prisoner and allegations "that prison staff members regularly assault inmates without cause" is sufficient to demonstrate imminent danger).

The facts of this case are unlike those in *Abdul-Akbar*, where the plaintiff alleged that he was improperly sprayed with pepper spray and refused medical treatment on only one occasion and "at no point" sought to rely on an ongoing danger theory. 239 F.3d at 311, 315 n.1. This case instead more closely resembles the conduct described in *Hall*, where a prisoner met the imminent danger exception by alleging that he had been assaulted by prison staff in the past and that prison officials maintain a practice of regularly assaulting inmates who complain. 44 F.4th at 225. Prater's case also resembles *Andrews*, where a prisoner met the imminent danger standard despite not alleging that he was presently confined with a prisoner with

another contagious disease. 493 F.3d at 1056. Rather, a combination of "an ongoing practice" of failing to screen inmates for diseases like HIV and hepatitis and "past injuries due to the practice" sufficiently demonstrated an imminent danger of harm to the plaintiff. *Id.* at 1057. Similarly here, Prater's allegations demonstrate a pattern of denial of treatment and attempts to cause reinjury.

Finally, even if these allegations were insufficient, Prater asked the court to allow him to amend his complaint with additional "exhibits and evidence" demonstrating ongoing harm. JA(Prater)-29. At minimum, the magistrate judge should have given Prater an opportunity to amend. *See Chavis v. Chappius*, 618 F.3d 162 (2d Cir. 2010) (vacating denial of an IFP motion after plaintiff was not awarded an opportunity to amend his complaint to demonstrate ongoing harm); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002) (district court should grant an inmate leave to amend a complaint unless any amendment would be inequitable or futile).

## B. Vaughn And Vaughan Exhausted Their Administrative Remedies.

The magistrate judges granted summary judgment to the defendants in *Vaughan* and *Vaughn* on the ground that they failed to exhaust their administrative remedies. But Pennsylvania provides another administrative route for reporting inmate abuse, and Vaughn and Vaughan adequately exhausted that procedure.

### 1. DC-ADM 804 and DC-ADM 001 Are Alternative, Coequal Paths for Exhaustion of Administrative Remedies.

The Inmate Grievance System governed by ADM 804 is Pennsylvania's default procedure for resolving problems arising during the course of a prisoner's confinement.[7] To exhaust administrative remedies under ADM 804, inmates must file a grievance within 15 working days and proceed through two levels of appeal.

However, inmates that suffer from abuse obtain recourse through a separate path, ADM 001. ADM 001 defines abuse as conduct that involves "the use of excessive force upon an inmate; the improper use of force upon an inmate; an occurrence of an unwarranted life-threatening act against an inmate; or an articulated verbal or written threat to inflict physical injury directed toward an inmate." ADM 001, Glossary of Terms. And under ADM 001, inmates may report abuse in one of three ways: (1) "verbally or in writing to any staff member;" (2) by filing a grievance in accordance with ADM 804; *or* (3) by reporting the abuse in writing to the Department's Bureau of Investigations and Intelligence (BII).[8] *Id.* at Part IV: Procedures.

---

[7] Pennsylvania Department of Corrections policies are available at https://www.cor.pa.gov/About%20Us/Pages/DOC-Policies.aspx.

[8] Under a prior version of DC-ADM 001, effective from November 24, 2014 - April 11, 2022, inmates had the option to report to the Department's Office of Special Investigations and Intelligence (OSII) rather than the BII.

After an inmate reports abuse through one of these three routes, ADM 001 requires that an investigation be conducted by the BII, the Bureau of Community Corrections, or the facility Security Office. *Id.* at Part C: Investigating Allegations of Abuse. ADM-001 contains a complex set of procedures that govern how these investigations are to take place. But ADM 001 requires no further action to be taken by the inmate that suffered abuse. The policy notes that it does not "alter the inmate's ability to appeal" a grievance under ADM 804, but ADM 001 itself does not require inmates to appeal the results of investigations regarding inmate abuse. *Id.* at Part B: Reporting Allegations of Abuse. After an inmate reports abuse, all that is left to do is await a decision by prison officials.

The DOC makes clear that the procedures for abuse are distinct from other types of grievances. Even though inmates may report abuse by filing an ADM 804 grievance, as soon as the prison receives a report of abuse, ADM 001 takes over. *See* ADM 804, Part D: Allegation of Abuse Grievances ("A grievance dealing with allegations of abuse shall be handled in accordance with Department Policy DC-ADM 001, 'Inmate Abuse.'"); ADM 001, Part B: Reporting Allegations of Abuse ("A grievance dealing with allegations of abuse shall be handled in accordance with this procedures manual."). Even when grievances are rejected as not in compliance with ADM 804, "the rejected grievance will be forwarded to the facility Security Office so an investigation can be initiated." ADM 001, Part B: Reporting Allegations of Abuse.

Although this Court has never ruled on the question, its decision in *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299 (3d Cir. 2020), supports the conclusion that inmates can exhaust administrative remedies through ADM 001. *Downey* recognized that "general grievance procedures do not apply to every situation." *Id.* at 306. For example, "a prisoner dealing with an emergency, or an urgent situation, is not bound by the ordinary procedures specified in the grievance policy." *Id.* (holding that a prisoner's severe glaucoma and an urgent need for surgery exempted him from complying with ADM 804). Some district courts have read *Downey* as demonstrating that inmates reporting physical abuse can exhaust administrative remedies through ADM 001 as an alternative to ADM 804. *See Pirl v. Ringling*, No. CV 19-208J, 2021 WL 1964461, at *12 (W.D. Pa. Mar. 29, 2021), report and recommendation adopted, No. 3:19-CV-208, 2021 WL 4198453 (W.D. Pa. Sept. 15, 2021) ("Consistent with the holding in *Downey*, the instant case . . . is not limited by the narrow confines of the DC-ADM 804 grievance steps."); *Freeman v. Wetzel*, No. CV 17-1506, 2020 WL 6730897, at *14 (W.D. Pa. Aug. 6, 2020), report and recommendation adopted, No. 2:17-CV-1506, 2020 WL 5362050 (W.D. Pa. Sept. 8, 2020) ("Following . . . *Downey*, the Court finds that Plaintiff's reporting of the assault via all three identified avenues exhausted his administrative remedies pursuant to DC-ADM 001.").

This Court's decision in *Downey* thus bolstered a growing consensus among the district courts in Pennsylvania "that allegations of abuse do not have to be filed through all levels of the DC-ADM 804 system if the inmate reports abuse through DC-ADM 001." *Moore v. Lamas*, No. 3:12-CV-223, 2017 WL 4180378, at *9 (M.D. Pa. Sept. 21, 2017).[9] This Court should endorse that conclusion: *Either* ADM 001 or ADM 804 is sufficient to exhaust administrative remedies in abuse cases.

The DOC promulgated ADM 001 "to ensure that an inmate is not subjected to corporal or unusual punishment, or personal abuse or injury." ADM 001 at Part III: Policy. ADM 001 provides more flexible procedures than ADM 804 to ensure that prisoners have effective methods of reporting abuse by prison staff. The magistrate judges' decisions below undermine these goals by obscuring the procedures that inmates must follow and erecting obstacles not supported by the policy. *See Ross v. Blake*, 578 U.S. 632, 644 (2016) ("When rules are so confusing that . . . no reasonable prisoner can use them, then they're no longer available.")

---

[9] *See also, e.g.*, *Lewis v. English*, No. CV 20-2790, 2022 WL 407376 (E.D. Pa. Feb. 10, 2022); *Victor v. Moss*, No. 1:20-CV-425, 2022 WL 2313168 (M.D. Pa. Apr. 5, 2022), report and recommendation adopted, No. CV 1:20-425, 2022 WL 2306904 (M.D. Pa. June 27, 2022); *Johnson v. Lasko*, No. 1:20-CV-149, 2022 WL 4396192 (W.D. Pa. Sept. 23, 2022). *Pressley v. Huber*, No. 3:08-CV-00449, 2018 WL 1079612 (M.D. Pa. Jan. 11, 2018), report and recommendation adopted, No. CV 3:08-0449, 2018 WL 1077300 (M.D. Pa. Feb. 27, 2018); *Talley v. PA Dep't of Corr.*, No. CV 19-1687, 2019 WL 6050744 (E.D. Pa. Nov. 14, 2019). *Cf. Newsome v. Teagarden*, No. 1:18-CV-317, 2021 WL 1176102 (W.D. Pa. Mar. 29, 2021).

(internal quotation marks omitted). There is no justification for introducing ambiguity and confusion into an administrative scheme that is clear on its face.

### 2. Isaac Vaughan exhausted administrative remedies by verbally reporting abuse to prison staff.

Vaughan failed to timely file an ADM 804 grievance related to an alleged assault in January 2018 within the required 15-day period, nor did he pursue the two levels of formal appeal specified by ADM 804. *See* JA(Vaughan)-13-14; *see also* JA(Vaughan)-236. However, Vaughan alleges that he verbally notified staff of his alleged abuse on several occasions. The magistrate judge erred in failing to consider whether Vaughan had exhausted administrative remedies via ADM 001.

Construed liberally, as required, Vaughan's *pro se* complaint pleads facts demonstrating that he verbally reported abuse consistent with ADM 001. In his amended complaint, under an Exhaustion of Remedies section, Vaughan stated that he "talked to everyone he could" about the alleged abuse. JA(Vaughan)-67 (cleaned up). In a deposition, Vaughan stated that he informed a prison nurse that he had been assaulted. JA(Vaughan)-268. He also alleges that he told another member of the prison staff that he had been assaulted, but "they just overlooked it, and let me sit in that cell." JA(Vaughan)-268. These allegations preclude summary judgment on exhaustion of administrative remedies. *See Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 443 (3d Cir. 2020) (holding that "sworn verified complaints . . . based

upon personal knowledge" and alleging "facts that would be admissible in evidence" are sufficient to survive summary judgment) (cleaned up).

### 3. Aaron Vaughn exhausted administrative remedies by following the procedures described in ADM 001.

Vaughn does not contest that he failed to appeal several grievances to final review under ADM 804. Nevertheless, he exhausted administrative remedies by verbally reporting inmate abuse consistent with ADM 001.

The magistrate judge recognized that Vaughn alleged facts demonstrating that he reported abuse under ADM 001. *See* JA(Vaughn)-39. Following the alleged assault on November 10, 2016, Vaughn reported the alleged abuse to Staff Member Sokol. JA(Vaughn)-24; *see also* JA(Vaughn)-483-484 ("I informed [Sokol] about the Nov. 10th abuse that was done to me by CO Gill and his co-worker"). Vaughn also requested to use an inmate abuse hotline and to initiate an investigation regarding the alleged abuse. JA(Vaughn)-24.

These actions were enough to initiate investigative proceedings under ADM 001, and prison officials conducted an investigation following Vaughn's report. JA(Vaughn)-24; see also JA(Vaughn)-355-56. OSII concluded its investigation in February 2017, and Vaughn subsequently filed this action in April 2017 after the prison notified him that the investigation was complete. JA(Vaughn)-359-362.

Despite recognizing that other district courts in Pennsylvania have held that administrative remedies can be exhausted via ADM 001, Magistrate Judge Lenihan

rejected this theory of exhaustion. JA(Vaughn)-39 ("unlike . . . our sister court . . . it is the opinion of the undersigned that an inmate must still exhaust his available appeals if he elects to file a grievance in accordance with DC-ADM 804").

This Court should reverse. "The burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant." *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018) (citing *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002)). Record evidence shows that Vaughn sufficiently exhausted available administrative remedies by reporting his alleged abuse under ADM 001. The magistrate judge erred in concluding that inmates may only exhaust administrative remedies via ADM 804.

## CONCLUSION

This court should vacate the judgments below so that they can proceed before a court with proper jurisdiction. In the alternative, if the Court finds that the magistrate judges possessed jurisdiction, it should reverse their rulings on the merits.

Appointed amicus counsel respectfully suggests that oral argument would assist the Court's consideration of these important issues.

Respectfully submitted,

*/s/ J. Scott Ballenger*
J. Scott Ballenger
Catherine E. Stetson
Samuel Gerstemeier (Third Year Law Student)
Tristan Locke (Third Year Law Student)

UNIVERSITY OF VIRGINIA
SCHOOL OF LAW
Appellate Litigation Clinic
580 Massie Road
Charlottesville, VA 22903-1789
(202) 701-4925
sballenger@virginia.edu

*Amicus Curiae for Appellants*

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Local Appellate Rule 46.1(e), the undersigned hereby certifies that he is counsel of record and is a member of the bar of the United States Court of Appeals for the Third Circuit.

December 20, 2022

*/s/ J. Scott Ballenger*
J. Scott Ballenger
*Amicus Curiae for Appellants*

**CERTIFICATE OF COMPLIANCE WITH THE TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 12,099 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

II.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Times New Roman.

December 20, 2022           */s/ J. Scott Ballenger*
                               J. Scott Ballenger
                               *Amicus Curiae for Appellants*

**CERTIFICATE OF SERVICE**

I, J. Scott Ballenger, hereby certify that on December 20, 2022, I caused seven

(7) copies of Appellant's Opening Brief and four (4) copies of Appendix Volumes I

and II to be dispatched by FedEx delivery, to the Clerk of the Court for the United

States Court of Appeals for the Third Circuit, and filed an electronic copy of the

brief via CM/ECF. I also caused a copy of this brief to be served electronically on

the following counsel for Appellee:

Sean Kirkpatrick
Howard Hopkirk
Daniel Mullen
Pennsylvania Office of the Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120


December 20, 2022                         */s/ J. Scott Ballenger*
                                          J. Scott Ballenger
                                          *Amicus Curiae for Appellants*

## CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEF

I, J. Scott Ballenger, hereby certify that the text of the electronically filed brief is identical to the text of the original copies that were dispatched on December 21, 2022, by FedEx delivery to the Clerk of the Court of the United States Court of Appeals for the Third Circuit

December 20, 2022                    */s/ J. Scott Ballenger*
                                     J. Scott Ballenger
                                     *Amicus Curiae for Appellants*

## CERTIFICATE OF PERFORMANCE OF VIRUS CHECK

I, J. Scott Ballenger, hereby certify that on December 20, 2022, I caused a virus check to be performed on the electronically filed copy of this brief using the following virus software: [Vipre Virus Protection, EndpointSecurity, version 11.0.7633.] No virus was detected.

December 20, 2022

/s/ J. Scott Ballenger
J. Scott Ballenger
*Amicus Curiae for Appellants*